E-FILED
Friday, 26 June, 2009  08:33:01 AM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA CHESS FEDERATION, INC., an Illinois not for profit corporation, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No.  09-3069 |
| SUSAN POLGAR, an individual, and HOAINHAN TRUONG, a/k/a PAUL TRUONG, an individual, | ) ) ) ) | |
| Defendants. | ) ) | |

### OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter is before the Court on Plaintiff United States of America Chess Federation, Inc.'s (the USCF) Motion to Remand (d/e 4).  In February 2009, the USCF filed a two-count Complaint in Sangamon County, Illinois Circuit Court, seeking a court order removing Defendants Susan Polgar and Hoainhan Truong from the USCF Executive Board pursuant to § 108.35(d) of the Illinois General Not for Profit Corporation Act.  Notice of Removal (d/e 1), Attachments 2-7, Complaint & Exhibits; 805 ILCS 105/108.35(d).  Polgar and Truong filed a Notice of Removal on

March 13, 2009, asserting that this Court has subject matter jurisdiction over the action under both 28 U.S.C. § 1331 and 28 U.S.C. § 1332(a). Plaintiff subsequently filed the instant Motion to Remand, asserting that the action does not present a federal question under 28 U.S.C. § 1331 and further that the amount in controversy does not exceed $75,000.00, as required for diversity jurisdiction under 28 U.S.C. § 1332(a).  For the reasons set forth below, the Motion to Remand is allowed.

The following facts are taken from the allegations of the Complaint. The USCF is an Illinois not-for-profit corporation with its principal place of business in Crossville, Tennessee.  The USCF is the official membership organization for chess players and supporters in the United States.  It is governed by a Board of Delegates, which consists of a seven-member Executive Board, Delegates at Large, and 125 Delegates apportioned among U.S. states.  The seven-member Executive Board functions as a board of directors and is tasked with managing the affairs of the USCF.  Defendants Polgar and Truong are members of the USCF Executive Board.  They were elected to the Executive Board in June 2007 and seated on or about August 5, 2007.  Polgar and Truong are married and have resided in Lubbock, Texas, since 2007.

Count I of the Complaint seeks an order removing Truong from the USCF Executive Board pursuant to 805 ILCS 105/108.35(d), and Count II seeks an order removing Polgar from the Executive Board under the same section. USCF also seeks an order indefinitely prohibiting Truong and Polgar from running for reelection to the Executive Board and an award of its reasonable costs incurred in connection with this action. Section 105/108.35(d) allows the Circuit Court to remove a director of a not-for-profit corporation from office in a proceeding commenced by the corporation "if the court finds (1) the director is engaged in fraudulent or dishonest conduct or has grossly abused his or her position to the detriment of the corporation, and (2) removal is in the best interest of the corporation." The statute further provides that "[i]f the court removes a director, it may bar the director from reelection for a period prescribed by the court." 805 ILCS 105/108.35(d).

According to the Complaint, Sam Sloan, a New York resident, was elected to the USCF Executive Board in July 2006, but was not reelected to the Board in July 2007. Count I alleges that, during and after the 2007 Executive Board election, Defendant Truong impersonated Sam Sloan and others in over 2,500 separate internet postings on USCF member forums,

which disparaged the purported authors as well as present and former USCF officers, committee members, employees, volunteers, and sponsors. According to the Complaint, digital footprints conclusively show that Truong was the author of the postings at issue.  As a result of the postings, Sloan filed suit in the United States District Court for the Southern District of New York against Truong, Polgar, and the USCF, among others. Additionally, the USCF launched an investigation into the allegations against Truong and Polgar.  The Executive Board designated a "Litigation Committee," which excluded Truong and Polgar, to permit confidential communications about the investigation and USCF's legal options.  The USCF hired the law firm of Kronenberger Burgoyne, LLP (Kronenberger) to review and investigate the allegations against Truong and Polgar.

On November 29, 2007, counsel for the USCF sent Truong a letter asking him: (1) to admit or deny whether he was involved in the postings or had knowledge of who made the postings, (2) to provide IP addresses for his home and work computers since 2005 or to consent for the USCF to obtain such information, and (3) to provide any information to support his claim that he was not at his computers at the time of the postings.  In response, Truong provided: (1) copies of two pay stubs from Texas Tech

University for the periods ending July 31, 2007, and August 31, 2007, and (2) a Southwest Airlines ticketless travel confirmation, dated June 2, 2007, in Truong's name for a one-way flight from Las Vegas, Nevada, to Lubbock, Texas, on June 12, 2007.  Complaint, Ex. I.

The Complaint further alleges that, after the 2007 Executive Board election, the USCF discovered that Truong made numerous misleading and dishonest representations during his Executive Board campaign, including false representations that he had earned a Ph.D. and an M.B.A. and had held high-level marketing positions with billion dollar companies. Additionally, it is alleged that Truong failed to reveal that he was married to Polgar, who was also running for the Board, despite being questioned about it on the USCF Issues Forum prior to the election.  Finally, the Complaint alleges that Truong engaged in bankruptcy fraud in June 2007 by swearing in his bankruptcy petition that he was unemployed, despite the fact that he was employed by Texas Tech University.  According to the USCF, Truong's actions are inconsistent with the values' and mission statement of the USCF and have had significant adverse consequences on the ability of the USCF to operate efficiently and achieve its corporate objectives.

5

Count II seeks Polgar's removal from the USCF Executive Board. Count II alleges that, from November 2007, through June 2008, Kronenberger performed a significant review of the Truong/Polgar controversy and sent a number of emails to the Litigation Committee, which included an Executive Board member named Randall Hough.  According to the Complaint, Polgar was aware that the USCF had engaged Kronenberger as counsel.  The USCF alleges that, between November 26, 2007, and June 24, 2008, Defendant Polgar and an accomplice unlawfully accessed Hough's email account at least 111 times, and that Polgar read and unlawfully copied numerous confidential communications regarding the USCF's investigations of her and Truong, including emails sent between members of the Litigation Committee and attorney-client privileged communications.  The USCF further alleges that Polgar and an accomplice distributed these confidential communications to the public via an internet blog and a website owned by Polgar.

Paragraph 53 of the Complaint alleges that "[i]n hacking into Hough's e-mail account, Defendant Polgar violated the federal Electronic Communications Privacy Act, the Computer Fraud and Abuse Act, in addition to violating California computer crimes laws." Complaint, p. 9.

According to ¶ 54, "[t]hese allegations are the subject of a pending federal action by the USCF against Polgar in the United States District Court for the Northern District of California, originally filed in June 2008 . . . ." Id. Count II further asserts that, in August 2008, when Polgar realized that her misconduct was about to be discovered, she preemptively sued the USCF, including all remaining Executive Board members and several USCF members who were critical of her conduct, in state court in Texas.[1] According to the USCF, Polgar's actions are inconsistent with the values and mission statement of the USCF and have had significant adverse consequences on the ability of the USCF to operate efficiently and achieve its corporate objectives.

ANALYSIS

Removal is proper in any action that could have originally been filed in federal court.  28 U.S.C. § 1441.  Defendants, as the proponents of

---

[1]In response to the Motion to Remand, Defendants have produced copies of Polgar's original and Amended Complaints in the Texas action as well as the Third Party Complaint that USCF filed against Truong in the Texas action, alleging claims of defamation, breach of fiduciary duty, fraud, conspiracy, and conspiracy to defraud, based on the alleged misconduct that is the subject of the instant case.  Memorandum of Defendants, Susan Polgar and Paul Truong, in Opposition to Motion for Remand (d/e 6) (Defendants' Memorandum), Exs. A, B, & C.  In analyzing an amount in controversy, the Court may look outside the pleadings to other evidence of jurisdictional amount.  Chase v. Shop "N Save Warehouse Foods, Inc., 110 F.3d 424, 427-28 (7th Cir. 1997).

federal jurisdiction, bear the burden of proof on the issue of jurisdiction. See McNutt v. General Motors Acceptance Corp., 298 U.S. 178 (1936). As previously noted, Polgar and Truong assert that this Court has subject matter jurisdiction over the action under both 28 U.S.C. § 1331 and 28 U.S.C. § 1332(a). The Court addresses each proffered basis for jurisdiction separately.

I.    FEDERAL QUESTION JURISDICTION

District courts have original jurisdiction in cases involving a "[f]ederal question," i.e., cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "Ordinarily, determining whether a particular case arises under federal law turns on the 'well-pleaded complaint' rule." Aetna Health Inc. v. Davila, 542 U.S. 200, 207 (2004) (quoting Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal., 463 U.S. 1, 9-10 (1983)). The Supreme Court has instructed on several occasions that a case arises under federal law for purposes of § 1331, "if 'a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" Empire Healthchoice Assur., Inc. v. McVeigh, 547 U.S. 677, 690 (2006)

(quoting Franchise Tax Bd. of Cal., 463 U.S. at 27-28).

Defendants assert that USCF is seeking relief for alleged violations of federal statutes, specifically the Electronic Communications Privacy Act, 18 U.S.C. § 2510, et seq., and the Computer Fraud Abuse Act, 18 U.S.C. § 1030, et seq.  Notice of Removal, ¶ 2.  Clearly, however, state law, not federal law, creates the instant cause of action.  In this case, USCF seeks to remove Truong and Polgar from the Executive Board pursuant to an Illinois statute.  Thus, the question becomes whether USCF's right to relief necessarily depends on resolution of a substantial question of federal law. As set forth below, the Court finds that it does not.

Defendants assert that, in analyzing Count II against Polgar, the Court must determine whether Polgar's actions violated the Electronic Communications Privacy Act and the Computer Fraud Abuse Act.  Thus, according to Defendants, USCF's right to relief as against Polgar necessarily depends on resolution of substantial questions of federal law.  The Court disagrees.  Under 805 ILCS 105/108.35(d), USCF's right to relief on Count II requires a showing that Polgar engaged in fraudulent or dishonest conduct or grossly abused her position to the detriment of the USCF.  The Complaint alleges specific actions by Polgar, all of which the USCF asserts

9

to be fraudulent and dishonest.  Paragraphs 53 and 54 of the Complaint assert that Polgar violated federal and California law in hacking into Hough's e-mail account and allude to a federal action pending in California. However, the actions attributed to Polgar in the Complaint could be found to be fraudulent or dishonest, even if they do not constitute a violation of federal law.  Thus, the analysis necessary to determine whether Polgar should be removed from the Executive Board does not necessarily involve an analysis of whether Polgar's actions violated federal law.  Defendants fail to establish that federal question jurisdiction exists under 28 U.S.C. § 1331.

II.    <u>DIVERSITY JURISDICTION</u>

District courts have jurisdiction over "civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  28 U.S.C. § 1332(a)(1).  The parties do not dispute the allegations regarding citizenship, and if they are true, the parties are diverse.  The issue becomes whether the amount in controversy exceeds $75,000.00, exclusive of interest and costs. Defendants bear the burden of demonstrating that the amount in controversy meets the statutory minimum.  <u>Meridian Sec. Ins. Co. v. Sadowski</u>, 441 F.3d 536, 541 (7th Cir. 2006).

When a complaint seeks injunctive relief, as USCF's does, "the amount in controversy is measured by the value of the object of the litigation." <u>Macken ex rel. Macken v. Jensen</u>, 333 F.3d 797, 799 (7th Cir. 2003) (quoting <u>Hunt v. Washington State Apple Advertising Commission</u>, 432 U.S. 333, 347 (1977)).  The Seventh Circuit has repeatedly held that "the object [of the litigation] may be valued from either perspective - what the plaintiff stands to gain, or what it would cost the defendant to meet the plaintiff's demand." <u>Id</u>. at 799-800 (citing cases).   In cases involving injunctive relief, the Seventh Circuit recognizes the following ways in which the amount in controversy may be established:

> (1) the value of the injunction to the plaintiff exceeds the statutory minimum; (2) the injunction would require an alteration in the defendant's conduct that would cost the defendant of at least the statutory minimum; (3) the injunction would force the defendant to forego an action that is worth more than the statutory minimum; or (4) the defendant's clerical or ministerial costs of compliance with the injunction would exceed the statutory minimum.

<u>Third Educ. Group, Inc. v. Phelps</u>, 2008 WL 3200251, *3 (E.D. Wis. Aug. 6, 2008) (citing <u>In re Brand Name Prescription Drugs Antitrust Litig.</u>, 123 F.3d 599, 609-10 (7th Cir. 1997)).

The Notice of Removal asserts that the Complaint seeks judgment

"under which the Plaintiff stands to gain in excess of $75,00.00 and/or Defendants' ability to meet the Plaintiff's demand exceeds the amount of $75,000.00." Notice of Removal, ¶ 3. Plaintiff's Motion to Remand contests this assertion. The Seventh Circuit recently addressed the amount in controversy analysis, noting that when the jurisdictional threshold is uncontested, courts generally will accept a party's good faith allegation of the amount in controversy unless it appears to a legal certainty that the claim is really for less than the jurisdictional amount. McMillian v. Sheraton Chicago Hotel & Towers, 2009 WL 1491459, at *5 (7th Cir. May 29, 2009). The Court of Appeals recognized, however, that when the allegation of the amount in controversy is challenged, the party asserting jurisdiction must support its assertion with "competent proof" and must prove the jurisdictional facts by a preponderance of the evidence. Id. (citing McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Meridian Sec. Ins. Co., 441 F.3d at 543). "To satisfy this burden, a party must do more than 'point to the theoretical availability of certain categories of damages.'" Id. (quoting Am. Bankers Life Assur. Co. of Florida v. Evans, 319 F.3d 907, 909 (7th Cir. 2003)).

Defendants assert that the amount in controversy exceeds $75,000.00

from the USCF, Truong, and Polgar's viewpoints.  The Court turns first to the USCF.  The USCF provides the Court with the declaration of USCF Executive Director Bill Hall, who avers that USCF Executive Board members are not compensated for their service to the USCF.  Memorandum in Support of Motion to Remand (d/e 5), Ex. 1, p. 2.  Hall further avers that the USCF does not stand to gain monetarily from the instant action, other than reimbursement of costs.  Id.  Defendants contend that Hall's declaration is irrelevant because it omits significant facts, i.e., that the USCF is seeking damages in excess of the jurisdictional amount in its Third Party Complaint against Truong in the Texas state court proceeding and in its California action against Polgar.  In its Third Party Complaint in the Texas action, the USCF requests an award of monetary damages against Truong for alleged defamation, breach of fiduciary duty, fraud, conspiracy, and conspiracy to defraud, based on the alleged misconduct that is the subject of the instant case, and states that the USCF "expects such amounts to vastly exceed one million dollars."  Defendants' Memorandum, Ex. A, p. 11, ¶ 28.  In its California action against Polgar, the USCF seeks punitive damages in an amount no less than $1 million, in addition to compensatory damages.  Defendants' Memorandum, Ex. B, p. 10-11.  Thus, Defendants

assert that, by its own admission, the USCF stands to gain far in excess of $75,000.00 from an entry of judgment in its favor in the instant case.

In the Third Party Complaint against Truong and the California action against Polgar, the USCF seeks damages that it has allegedly already sustained as a result of Truong and Polgar's actions.  If the USCF were to achieve prospective injunctive relief in the instant matter, securing the removal of Truong and Polgar from the Executive Board, it would not alter damages that the USCF has already sustained as a result of the alleged misconduct.  Additionally, while the three cases revolve around the same alleged misconduct, the elements of the claims raised in each case do not mirror one another.  Thus, damages claimed by the USCF in the Texas and California actions do not establish that the requisite amount in controversy exists in the instant case from USCF's viewpoint.

The Court turns its analysis to the value of the object of the litigation from Truong and Polgar's viewpoints.   Defendants have each filed an affidavit in support of removal.  Defendants' Memorandum, Attachment 6, Declaration of Susan Polgar in Support of Petition for Removal to Federal Court (Polgar Declaration);  Defendants' Memorandum, Attachment 7, Declaration of Paul Truong in Support of Petition for Removal to Federal

Court (Truong Declaration).  Truong avers that he is employed with Texas Tech University in connection with the Susan Polgar Institute for Chess Excellence and also that he manages Polgar's business ventures in the international chess world.  Truong Declaration, ¶ 2.  According to Truong, his removal for cause from the Executive Board "for either fraudulent conduct or participation in illegal conduction" would "have a deleterious effect in [his] continued employment at Texas Tech University and income to be derived from [his] continued ability to act as a business representative for Susan Polgar, all of which, separate from the monetary damages to which [he] would be exposed in the Third Party Complaint, exceed $75,000.00." Id., ¶ 4.  Similarly, Polgar avers that the harm to her that would result from a "for cause" removal from the USCF Executive Board would substantially exceed $75,000.00 due to: (1) damage to her reputation in the international chess community, (2) jeopardy to her continued employment at Texas Tech University, and (3) jeopardy to her continued business interests including publication of chess books, production of instructional DVDs, and potential endorsement contracts.  Polgar Declaration, ¶ 4.  Polgar further states that she has set forth her harm in her First Amended Complaint in the Texas action.  Id.

Defendants have not provided the Court with any evidence of their annual salaries and benefits at Texas Tech or of the amount of income received from the other identified income sources, despite the fact that such information would be of the type that would be readily available to them. Polgar's reliance on her Texas Complaint is unavailing because that action seeks damages that Polgar has allegedly already suffered because of allegations raised against her in the chess community, not based on removal from the Board.   Additionally and significantly, the Seventh Circuit instructs that "the test for determining the amount in controversy is the pecuniary result to either party which the judgment would <u>directly produce</u>." <u>McCarty v. Amoco Pipeline Co.</u>, 595 F.2d 389, 393 (7th Cir. 1979) (emphasis added).  In the instant case, judgment in favor of the USCF would result in the removal of Truong and Polgar from the Executive Board.  The remainder of the claimed harm is speculative, at best.

Defendants assert that the instant case is analogous to <u>Lindland v. United States of America Wrestling Ass'n, Inc.</u> 230 F.3d 1036 (7th Cir. 2000).  Matt Lindland lost a championship bout during the United States Olympic trials for Greco-Roman Wrestling to Keith Sieracki.  As the winner, Sieracki was entitled to be nominated to the United States Olympic

Committee as a member of the United States Olympic team.  Lindland protested the match and eventually initiated arbitration as allowed under applicable rules.  The arbitrator directed that the championship bout be re-wrestled, and it was.  Lindland won the rematch, but he was not given the nomination to the Olympic team; rather, he was named an alternate.  Lindland sued in federal court to enforce the arbitration award.   The Seventh Circuit found that diversity jurisdiction existed, holding that "the value of a position on the Olympic team cannot be said (to a legal certainty) to be less than $75,000."  Id. at 1038 (citation omitted).  According to Defendants, it is not unreasonable to view removal from the USCF Executive Board as valuable as the object of the litigation in Lindland.

Lindland, however, is distinguishable from the instant case.  Nothing in the record substantiates a finding that a seat on the USCF Executive Board is as valuable as the opportunity to participate in the Olympic games.  It is clear that Polgar and Truong's success, financial and otherwise, flows from Polgar's substantial chess ability, and not from their positions with the USCF.  Polgar's own First Amended Complaint in the Texas action indicates that Texas Tech University established the Susan Polgar Institute for Chess Excellence and hired Polgar as Executive Director and head chess coach in

May 2007.  <u>Defendants' Memorandum</u>, Ex. C, p. 5, ¶ 22.  This would have been prior to the USCF Executive Board election in June 2007.  Thus, the Court finds that Defendants' allegations regarding the amount in controversy are too speculative and without adequate foundation to support a finding that diversity jurisdiction exists under 28 U.S.C. § 1332(a).

THEREFORE, for the reasons set forth above, this Court lacks jurisdiction over the instant matter, and Plaintiff's Motion to Remand (d/e 4) is ALLOWED.  This case is remanded to the Circuit Court of Sangamon County, Illinois.  All pending motions are denied as moot.  This case is closed before this Court.

IT IS THEREFORE SO ORDERED.

ENTER:   June 25, 2009

FOR THE COURT:

_____ s/  Jeanne E. Scott _____
JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE